EASTERN DISTRICT OF NEW YORK

---

MARIE MONDELUS, ANTOINE S. JEAN, by his
Legal Guardian Miriam Davidson,

                                         Plaintiffs,

v.

AUGUST WEST DEVELOPMENT, LLC,
FRANK BEE, ELI MASHIEH, JASON STEINBERG,

                                         Defendants.

**MEMORANDUM AND ORDER**

19-CV-4832 (LDH) (LB)

---

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiffs Marie Mondelus and Antoine Jean, by his Legal Guardian Miriam Davidson,[1] bring the instant action against Defendants August West Development, LLC ("August West"), Frank Bee, Eli Mashieh (collectively, the "August West Defendants"); and Jason Steinberg (together with the August West Defendants, "Defendants"), for false personation of a federal officer in violation of 18 U.S.C. § 912, and for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The August West Defendants and Steinberg each moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint in its entirety.

---

[1] By order dated July 20, 2021, Magistrate Judge Steven Tiscione granted Plaintiffs' motion to amend the case caption. This amendment reflects the appointment of a Legal Guardian to manage Plaintiff Antoine Jean's personal affairs due to ongoing health issues. (*See generally* Plaintiff's Motion to Amend the Case Caption, ECF No. 42.)

1

## BACKGROUND[2]

Plaintiffs Antoine S. Jean and Marie Mondelus are senior, Haitian immigrants who have been married for over 45 years. (Am. Compl. ("Compl.") ¶¶ 5–6, ECF No. 19.) Plaintiffs reside in Brooklyn, New York, as tenants by entirety of 1262 Hancock Street (the "Residence"). (*Id*. ¶ 6.) On or about October 4, 2015, Defendants Frank Bee and Eli Mashieh, whom are principals and managing members of Defendant August West Development, LLC, arrived at the Residence, and introduced themselves to Plaintiffs as employees of the United States Department of Housing and Urban Development ("HUD"). (*Id*. ¶¶ 7–8, 14.) According to the Complaint, Defendants claimed to be in the neighborhood to assist senior citizens with refinancing their homes under the Home Affordable Refinance Program ("HARP"). (*Id*. ¶ 14.) Moreover, during this initial interaction, Defendants Bee and Mashieh informed Plaintiff Jean that they had superior knowledge regarding Plaintiff Jean's mortgage and would help him reduce his monthly payments. (*Id*. ¶ 15.) Defendants Bee and Mashieh then presented Plaintiff Jean a handwritten note to sign, which they represented would allow Defendants to begin the refinancing process. (*Id*. ¶ 16.) Plaintiff Jean, who is "functionally illiterate in English," signed the paper, under the belief that what he was signing had to do with reducing his monthly mortgage payment. (*Id*. ¶¶ 16–17.) Defendants Bee and Mashieh subsequently left with the signed document. (*Id*. ¶ 18.)

On December 27, 2015, Defendants Bee and Mashieh returned to the Residence with a document, which they represented to be the refinancing materials, but was in actuality a Contract of Sale for the Residence (the "Contract"). (*Id*. ¶ 19; Compl., Ex. C. (the "Contract"),

---

[2] The following facts are taken from the amended complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated.

2

ECF No. 19-3.)[3]  The Contract was drafted as between Plaintiff Jean and August West and provided that Plaintiff Jean would sell the Residence to Defendant August West for $635,000, with a closing date of June 27, 2016.  (Compl. ¶ 20; Contract at 1.)  The contract further identified Defendant Jason Steinberg, as the attorney and escrowee for the seller.  (Contract at 1, 4.)  Under the terms of the contract, Defendant August West agreed to deposit a $10,000 down payment with Defendant Steinberg, who would hold the funds in an escrow account until closing.  (Compl. ¶¶ 22–23; Contract at 1.)  Plaintiffs did not otherwise retain, meet with, or speak to Defendant Steinberg or any other attorney in relation to the purported sale of the Residence.  (Compl. ¶¶ 84, 89–90.)  Plaintiff Jean signed the Contract, which was recorded by video.  (*Id*. ¶ 48.)

On or about March 18, 2016, Defendants mailed a document to Plaintiffs which read: "HELP FOR HOMEOWNERS IN FORECLOSURE YOU ARE IN DANGER OF LOSING YOUR HOME."  (*Id*. ¶ 73.)  Then, sometime before the June 27, 2016 closing date, Defendants again returned to the Residence to warn plaintiffs that they needed to move out as soon as possible.  (*Id*. ¶¶ 26–27.)  Plaintiffs refused. (*Id*. ¶ 28.)  In response, Defendant August West commenced an action against Plaintiff Jean in the New York State Supreme Court, Kings County, for, *inter alia*, breach of the Contract and specific performance (the "State Court Action").  (*Id*. ¶¶ 29–31.)  The August West Defendants mailed Plaintiffs a summons and complaint on or about March 28, 2016.  (*Id*. ¶ 73.)  In an answer dated July 2, 2016, Plaintiff Jean asserted several counterclaims against August West for fraud in the inducement, duress

---

[3] The December 27, 2015 contract, which has been appended to the amended complaint, is incorporated by reference.  *See Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) ("It is well established that '[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered.'" (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)).

3

and coercion, intentional infliction of emotional distress, fraud and forgery, and assault. (Supp. Decl. of Daniel Richman ("Richman Decl."), Ex. N at 10–14, ECF No. 37-20 ("State Court Answer")).[4] On October 18, 2016, the August West Defendants mailed Plaintiffs' counsel a document tiled "verified reply." (Compl. ¶ 73.) On December 17, 2020, because Plaintiff Jean did not appear for a deposition in the state court action and his answer was stricken as a result, the state court entered a default judgment against Plaintiff Jean. (Richman Decl., Ex. M, ECF No. 37-19 ("Default Judgment Order"); *id.*, Ex. G, ECF No. 37-8 ("Conference Order"); *id.*, Ex. H, ECF No. 37-8 ("Pre-Note Order").)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss, *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

---

[4] This Court can take judicial notice of related proceedings. *See, e.g.*, *Shuttlesworth v. City of Birmingham, Ala.,* 394 U.S. 147, 157 (1969) (taking judicial notice of related case between same parties); *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991).

# DISCUSSION[5]

## I. Res Judicata

"The doctrine of claim preclusion, or res judicata, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). To demonstrate that a claim is barred under the doctrine of res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001) (quoting *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 284–85 (2d Cir. 2000)). "To determine whether claims arise from the same factual grouping under New York law, [courts] consider [1] whether the facts are related in time, space, origin, or motivation, [2] whether they form a convenient trial unit, and [3] whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Levin v. Barone*, 771 F. App'x 39, 40 (2d Cir. 2019) (internal quotations and citation omitted).

The August West Defendants urge the Court to employ the doctrine of res judicata to dismiss the amended complaint in its entirety. (*See generally* Defs.' Suppl. Mem. L. Supp. Mot. Dismiss ("Defs.' Suppl. Mem."), ECF No. 37-17.). In opposition, Plaintiffs maintain that that the August West Defendants have not met each of the elements required to trigger res judicata.

---

[5] Because Defendant Jason Steinberg is an attorney, the Court treats him as an attorney, not a pro se litigant. *See Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 315 (S.D.N.Y. 2015) (collecting cases), *aff'd*, 626 F. App'x 20 (2d Cir. 2015).

5

(Pls.' Suppl. Resp. Opp'n Mot. Dismiss ("Pls.' Suppl. Resp."), ECF No. 40-8.) Plaintiffs are wrong.

*First,* Plaintiffs argue that res judicata does not apply because there is no final judgment on the merits upon which res judicata can be predicated. (Pls.' Suppl. Resp. at 2.). However, such an argument is unavailing as "it has long been the law that default judgments can support res judicata as surely as judgments on the merits." *EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007) (citation omitted). Plaintiffs further contend that the state court order granting default judgment is not itself sufficient given the unexpired one-year statutory period Plaintiffs have to move to vacate the order. (Pls.' Suppl. Resp. at 2.) This argument is also without merit. That is, "the doctrine of res judicata is applicable to a default judgment that has not been vacated[.]" *Clarkstown Recycling Ctr., Inc. v. Parker, Chapin Flattau & Klimpl, LLP*, 1 F. Supp. 2d 327, 329 (S.D.N.Y. 1998) (citation omitted). Plaintiffs concede such is the case here. (Pls.' Suppl. Resp. at 2.)

*Second*, Plaintiffs argue that the claims in this action do not arise out of the "same transaction or series of transactions" that were at issue in the State Court Action. (Pls.' Suppl. Resp. at 3.) Not so. In determining whether to invoke that doctrine of res judicata the Court's "analysis is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim *even if the later claim is based on different legal theories or seeks dissimilar or additional relief*." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (emphasis added).

Such is the case here. Both the State Court Action and the instant suit are based upon the sale of Plaintiffs' property. And in the State Court Action, Plaintiff Jean raised several counterclaims based on near-identical facts contained in the Amended Complaint. (*See*

6

*generally* State Court Answer at 9–14.) That the counterclaims are brought under different legal theories—fraud in the inducement, duress and coercion, intentional infliction of emotional distress, fraud and forgery, and assault—are ultimately of no moment. *See, e.g.*, *Dekom v. Fannie Mae*, 846 F. App'x 14, 19 (2d Cir. 2021) (dismissing several of plaintiff's claims, including claims brought under the RICO statute, as barred by res judicata following a foreclosure default judgment in New York state court). Hence, in accordance with New York's transactional approach, Plaintiffs' claims arise out of the same factual grouping.

*Third*, Plaintiffs argue that the action lacks the requisite identity or privity of parties. In particular, Plaintiffs note that Plaintiff Mondelus and Defendant Steinberg are not parties in the state court action. (Pls.' Suppl. Resp. at 3.) As a preliminary matter, the motion to dismiss premised on res judicata is brought solely on behalf of the August West Defendants, and accordingly, Plaintiffs' arguments as to Defendant Steinberg are misplaced. With respect to Marie Mondelus, contrary to Plaintiff's contention, her absence from the State Court Action does not defeat res judicata. Although Marie Mondelus was not a party in the state court action, privity still exists. *See, e.g.*, *Winnie v. Durant*, No. 9:20-CV-502, 2021 WL 1999782, at *3 (N.D.N.Y. May 19, 2021) ("Unlike a traditional privity analysis, however, privity in the res judicata setting is an issue of substance rather than merely a reflection of the names in the caption.") (citing *Aplert's Newspaper Delivery Inc. v. The New York Times Co*., 876 F.2d 266, 270 (2d Cir. 1989)). Privity for the purposes of res judicata exists, "when the interests involved in the prior litigation are virtually identical to those in later litigation." *Cho v. Blackberry Ltd*., 991 F.3d 155, 170 (2d Cir. 2021) (citation omitted). That is, privity in the res judicata context exists for "those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and

7

possibly coparties to a prior action." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995) (quotation marks and citation omitted). Here, the amended complaint sets forth Plaintiff Marie Mondelus's shared tenancy by entirety with Plaintiff Jean, who was a party in the State Court Action. (Compl. ¶ 6.) Indeed, to the extent the crux of both disputes involve the Residence, the Plaintiffs' interests are virtually indistinguishable.

Accordingly, Plaintiffs' claims against the August West Defendants are barred by the doctrine of res judicata.

## II.  Civil Racketeer Influenced and Corrupt Organizations ("RICO") Act

### a. Ripeness

Section 1964(c) of the RICO Act "creates a private civil cause of action that allows '[a]ny person injured in his business or property by reason of a violation of [§] 1962' to sue in federal district court and recover treble damages, costs, and attorney's fees." *RJR Nabisco, Inc. v. Eur. Cmty.*, 579 U.S. 325, 331 (quoting 18 U.S.C. § 1964(c)). "[A]s an element of proof . . . a plaintiff must show he has been injured in his business or property by reason of a violation of 18 U.S.C. § 1962." *Cruden v. Bank of New York*, 957 F.2d 961, 977 (2d Cir. 1992) (quotation marks and citation omitted). Notably, the type of injury required under § 1964(c) cannot be "'speculative or their amount and nature unprovable.'" *Id*. (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 339 (1971)). "Until such injury occurs, there is no right to sue for damages under § 1964(c), and until there is a right to sue under § 1964(c), a civil RICO action cannot be held to have accrued." *Id*. (quotation marks and citation omitted).

Defendants contend that Plaintiffs' claims are speculative and uncertain warranting dismissal of the RICO claim for lack of ripeness. (Defs.' Mem. L. Supp. Mot. Dismiss ("Defs.' Mem.") at 13, ECF No. 37.) Specifically, the August West Defendants argue the crux of

Plaintiffs' claims is that the August West Defendants used false pretenses to steal the Residence from the Plaintiffs. (*Id*.) However, Plaintiffs do not dispute that they maintain possession and ownership of the Residence. (Pls.' Mem. L. Opp'n Mot. Dismiss ("Pls.' Opp'n") at 14, ECF No. 40.) Thus, the Court agrees that Plaintiffs claims of injury resulting from the alleged fraud are speculative.

*First Nationwide Bank v. Gelt Funding Corporation* is instructive. In *First Nationwide Bank*, the Second Circuit considered RICO claims arising out of fraudulently induced loans and considered whether plaintiff's claims were "ripe" for suit. 27 F.3d 763, 767 (2d Cir.1994). There, plaintiff argued that the fraudulent loans were ripe for suit "the moment the loans were made, regardless of whether the borrowers presently were in default or whether [plaintiff] completed efforts to foreclose on the collateral properties." *Id*. Ultimately, however, the court held that "to the extent [the plaintiff's] complaint is predicated on loans that have not been foreclosed, its claims are not ripe for adjudication because it is uncertain whether [the bank] will sustain any injury cognizable under RICO." *Id*. The court's holding rested, in part, on the principle that "a cause of action does not accrue under RICO until the amount of damages becomes clear and definite[.]" *Id*. at 768. And, in the context of the fraudulently induced loans, the amount of damages would not be definite "until it is finally determined whether the collateral is insufficient to make the plaintiff whole, and if so, by how much." *Id*. (citation omitted).

And, in *Motorola Credit Corp. v. Uzan*, the Second Circuit considered RICO claims stemming from the non-payment of several financing agreements. 322 F.3d 130, 134 (2d Cir. 2003). There, in addition to the civil action filed in the Southern District of New York,

9

plaintiffs had initiated several arbitration proceedings in Switzerland. *Id*. The court ultimately determined:

> [T]he RICO damages sought are in respect of a loss that would be abated to the extent that: Plaintiffs realize value on the collateral; Plaintiffs recover in the Swiss arbitrations; or the size of the debt on the underlying contracts, or the obligation to pay it, is affected by any ruling on [the arbitration respondent's] defenses in the Swiss arbitration that is binding and enforceable. These contingencies, and other conceivable contingencies, remain.

*Id*. at 136. Or, in other words, the Second Circuit recognized "separate and apart from the issue of plaintiff's status as a secured creditor . . . a plaintiff's damages are not 'clear and definite' so long as that plaintiff's damages could be mitigated or abated in pending litigation." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 232 (E.D.N.Y. 2014) (citing *Motorola Credit Corp.*, in part, for the proposition that the rationale for the ripeness requirement "applies with full force to cases where the RICO damages depend on the results of pending litigation or arbitration proceedings").

The instant matter is not unlike *First Nationwide Bank* or *Motorola* in any material respect. Here, Defendant August West has an ongoing action in New York State Supreme Court, Kings County, against Plaintiff for, *inter alia*, specific performance of the Contract. (Defs.' Mem. at 5.) And perhaps, as a result, Plaintiffs have not alleged any clear and definite damage sustained from the purported fraud. Indeed, Plaintiffs do not dispute the fact that ongoing litigation in the state court action may ultimately bear on some portion of their alleged RICO injury. (Pls.' Opp'n at 14.) To the contrary, in their supplemental briefing, Plaintiffs repeatedly contend Defendants' State Court Action "is on its death bed," which the Court presumes would ultimately have a significant impact on any alleged damages in the instant action. (Pls.' Suppl. Mem. at 3.) Rather than identify any concrete damages alleged, Plaintiffs argue, without citation, that the amended complaint "is replete with details pertaining to the

10

injury suffered by the Plaintiffs in their business property." (Pls.' Opp'n. at 14.) The Court disagrees. Indeed, upon a review of the amended complaint, the Court has not identified any non-speculative injury alleged by the Plaintiffs to their business or property, as required by Section 1964(c). Accordingly, given Plaintiffs' failure to allege clear and definite damage, Plaintiffs' RICO causes of action are ripe for dismissal (pun intended). *See, e.g.*, *Sky Med. Supply Inc.*, 17 F. Supp. 3d at 233 (collecting cases and dismissing plaintiff's RICO claims, without prejudice, where "plaintiff's damages [were' not 'clear and definite' for so long as [the] . . . claims that form[ed] the basis of plaintiff's RICO causes of action [were] still being litigated in state court or arbitration").[6]

### b. Substantive RICO Claims

Even if Plaintiffs' claims were not dismissed as unripe, Plaintiffs have failed to substantively establish a plausible cause of action under RICO.

Section 1962(c) of the RICO statute makes it "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). Notably, civil RICO is "an unusually potent weapon" given that "defendants face the threat of treble damages as well as reputational damages as a consequence of being labeled racketeers." *Gutterman v. Herzog*, No. 20CV1081, 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020) (internal quotations and citations omitted). As such, "courts have an obligation to scrutinize civil RICO claims early in the litigation-to separate the rare complaint that actually states a claim for civil RICO from that more obviously

---

[6] As noted above, a default judgment was entered in the State Court Action, which followed the filing of the second amended complaint in the instant action. However, as this opinion continues to set forth, given Plaintiffs' claims are dismissed on other grounds, any amendment to address the ripeness issue would be futile.

11

alleging common law fraud." *Rosenson v. Mordowitz*, No. 11 CIV. 6145, 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012).

Against this backdrop, to sustain a civil RICO claim under this section, "a plaintiff must show (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (internal quotation marks and citation omitted).

Here, in the most general terms, Plaintiff alleges that Defendants violated the civil RICO statute by engaging in a conspiracy to defraud homeowners in the Kings and Queens County areas, by luring "immigrants with grade level education" into "murky real estate contract[s]," in violation of 18 U.S.C. § 1962(c).  (Pls.' Opp'n at 2.)  Defendants argue that the claim should be dismissed because, among other things, Plaintiffs failed to plead any predicate actions.[7]

    c. **Mail and Wire Fraud Claims**

To plead a civil RICO claim, "[t]he pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (citing 18 U.S.C. § 1961(5)).  Section 1961(1) of the RICO statute sets forth the enumerated predicate acts that constitute racketeering activity, which as relevant here, includes mail and wire fraud.  18 U.S.C. § 1961(1);[8] *see also Williams v. Affinion Grp.*,

---

[7] Defendants also argue that the claim should be dismissed because Plaintiff failed to plead a pattern of predicate acts, or "distinctness," as required when bringing a RICO claim against a corporate defendant.  The Court need not reach this argument because, as detailed herein, Plaintiffs have failed to sufficiently plead any predicate actions.

[8] Based on the amended complaint, it is unclear whether Plaintiffs intended for their false personation of a federal officer, in violation of 18 U.S.C. § 92, to function as a predicate act under its civil RICO claim.  While it is brought as an independent cause of action, under the first cause of action, the amended complaint does refer to a pattern of

*LLC*, 889 F.3d 116, 124 (2d Cir. 2018) ("Section 1961(1) sets forth an exhaustive list of predicate 'acts' that can constitute a pattern of 'racketeering activity,' including section 1341 and 1343 (mail and wire fraud, respectively).").

"To invoke mail or wire fraud as predicates under RICO, a plaintiff must assert: (1) the existence of a scheme to defraud, (2) the defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *Simmons v. Nationstar Mortg.*, No. 20-CV-1066, 2021 WL 950022, at *4 (E.D.N.Y. Mar. 12, 2021) (quotation marks and citation omitted). "The gravamen of the offense is the scheme to defraud," which is defined as "a plan to deprive a person of something of value by trick, deceit, chicane or overreaching." *Williams*, 889 F.3d at 124 (first citing *United States ex rel. O'Donnell v. Countrywide Home L*oans, Inc., 822 F.3d 650, 657 (2d Cir. 2016)).

Notably, "[a]llegations of mail fraud and wire fraud under 18 U.S.C. §§ 1341, 1343 must be made with the particularity required by [Rule 9(b) of the Federal Rules of Civil Procedure], which requires that the complaint allege content, date, place, or intent of any alleged misrepresentation." *Entretelas Americanas S.A. v. Soler*, 840 F. App'x 601, 603 (2d Cir. 2020), *as amended* (Jan. 7, 2021) (quotation marks and citation omitted). However, "[i]n cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information." *Calabrese v. CSC Holdings, Inc.*, 283 F. Supp. 2d 797, 808 (E.D.N.Y. 2003); *see also Williams*, 889 F.3d at 124 (collecting cases). Nonetheless, "a detailed description of the

---

racketeering activity, established "through multiple instances of Mail Fraud and Wire Fraud in violation of 18 ss 1341 and 1343; and through violation of 18 U.S.C. s 912 by Falsely Personating a Federal Officer." (Compl. ¶ 44.) However, and in any event, 18 U.S.C. § 1961(1) sets forth those enumerated acts that constitute racketeering activity, and § 912 is not listed therein.

13

underlying scheme and the connection therewith of the mail and/or wire communications," is required to satisfy Rule 9(b). *Calabrese*, 283 F. Supp. 2d at 808 (E.D.N.Y. 2003) (quotation marks and citation omitted); *see also Williams*, 889 F.3d at 125 ("[A] plaintiff still needs to allege a material misrepresentation as part of the defendants' scheme to fraud to state a violation of section 1341 or 1343."). And where, as here, "multiple defendants are accused of mail and wire fraud, the plaintiff must particularize and prove each defendant's participation in the fraud as well as each defendant's involvement in the two necessary predicate acts." *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724, 2020 WL 10508196, at *8 (E.D.N.Y. June 28, 2020) (quotation marks and citation omitted).

Here, the amended complaint alleges several acts of mail and wire fraud in furtherance of the RICO enterprise and conspiracy, including communications between the Defendants related to their alleged scheme, the wiring of funds related to the underlying fraudulent contract, and the mailing of court papers in the state court action. (Compl. ¶ 73.) However, the amended complaint lacks particularized allegations of any underlying scheme based on a material misrepresentation. For example, while the amended complaint alleges generally that Plaintiff Jean signed the Contract "under the belief that he was signing a paper that has to do with reducing his monthly mortgage payment," it does not include any specific representations made by the August West Defendants that can be said to have induced such a belief. (*Id.* ¶ 17.) The closest that Plaintiffs come to alleging actual fraud or misrepresentation, with any particularity, is the allegation that "[Defendants Bee and Mashieh] showed up at the [Residence] . . . falsely claiming to be employees of the Housing and Urban Development who were in the neighborhood to assist senior citizens with regard to refinancing their homes under [HARP]."

14

(Compl. ¶ 14.)  But, the amended complaint does not allege how this representation ultimately misled Plaintiffs into signing the Contract.

The case law upon which Plaintiffs rely only highlights the deficiencies here.  For example, in *Spira v. Nick*, while the court did recognize that "[t]he mailings that are elements of the offense need not themselves contain false or misleading statements," it then looked to the sufficiency of the allegations which constituted the fraudulent scheme.  876 F. Supp. 553, 559 (S.D.N.Y. 1995).  The court indicated,

> the circumstances constituting the fraud—the relationships giving rise to the fiduciary duties owed by Nick, the details of the alleged embezzlement, and the concealment—generally are stated with particularity.  The amended complaint alleges, among other things, specific diversions of funds, giving in most cases the approximate dates, amounts and purposes.

*Id*.  As noted, such is not the case here.  The allegations against Defendant Steinberg are likewise deficient.  As to Defendant Steinberg, the amended complaint generally alleges that he fraudulently received funds on behalf of the Plaintiffs.  (*See* Compl. ¶ 73.)  However, the amended complaint fails entirely to allege Defendant Steinberg's participation in the fraudulent scheme more generally, in any non-conclusory way, or allege his involvement in any of the predicate acts.

Further, while Plaintiffs allege that several "wire and mail communications" were used in furtherance of Defendants' scheme to defraud Plaintiffs, these allegations fail to specify what purposes any of these wirings and/or mailings served within the Defendants' alleged scheme–let alone with particularity.  *See, e.g.*, *See Curtis & Assocs., P.C. v. Law Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) (dismissing RICO claims because the plaintiffs neither "allege which, if any, statements by the defendants . . . were allegedly false or misleading" nor "ma[d]e [any] attempt to identify the purpose of the mailings within the

15

defendants' overall alleged fraudulent scheme"), *aff'd*, 443 F. App'x 582 (2d Cir. 2011). And to the extent the mailings relate to the transmission of various litigation documents—namely (1) the electronic filing and service of court papers containing false and misleading statements; (2) Defendants mailing to Plaintiff of a summons and complaint; and (3) Defendants mailing to Plaintiff of a verified reply—"litigation activity alone cannot constitute a viable RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). That is, the Court agrees with the "the overwhelming weight of authority [that] bars a civil RICO claim based on the use of the mail or wire to conduct allegedly fraudulent litigation activities as predicate racketeering acts." *Carroll v. U.S. Equities Corp.*, No. 118CV667, 2019 WL 4643786, at *12 (N.D.N.Y. Sept. 24, 2019) (collecting cases). Having failed to sufficiently allege any predicate act, Plaintiffs' RICO claims are dismissed.

### d. RICO Conspiracy Claim

Plaintiffs also allege a conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d), which makes its unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c)." 18 U.S.C. § 1962(d). To sufficiently plead such a conspiracy, "a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions." *Lynn v. McCormick*, 760 F. App'x 51, 54 (2d Cir. 2019) (quoting *Williams*, 889 F.3d at 124). However, because the "alleged conspiracy [is] an agreement to commit the same substantive RICO violations [the court] has deemed insufficiently pled," Plaintiffs' claim necessarily fails. *Id*. ("[T]he alleged conspiracy was an agreement to commit the same substantive RICO violations we have deemed insufficiently pled, so there was no agreement to violate RICO's substantive provisions."). Accordingly, Plaintiffs' RICO conspiracy claim is dismissed.

### III. False Personation of a Federal Officer

Section 912 of the United States Codes makes punishable by a fine or imprisonment "falsely assum[ing] or pretend[ing] to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof." 18 U.S.C. § 912. Plaintiffs allege Defendants violated 18 U.S.C. § 912 by "passing themselves off as federal officers or employees." (Compl. ¶ 95.) Critically, however, 18 U.S.C. § 912 is a federal criminal statute. *See, e.g.*, *Frison v. Zebro,* 339 F.3d 994, 999 (8th Cir. 2003). And, "[t]here is nothing in the language of 18 U.S.C. § 912 to suggest that Congress intended to create a private right of action or a private remedy for a violation." *Id.* "To the contrary, the statutory language establishes that Congress intended the statute to be enforced through the imposition of criminal penalties." *Id.*; *see also Backer v. USD 30 Billion MTN Programme*, No. 16 CIV. 6577, 2017 WL 6387732, at *7 (S.D.N.Y. Sept. 30, 2017) ("[T]here is no private right of action for violation of the proscription against impersonating a federal officer under 18 U.S.C. § 912." (quotation marks omitted)). Accordingly, Plaintiffs' claim based on a violation of 18 U.S.C. § 912 is dismissed.

### CONCLUSION

For the foregoing reasons, the August West Defendants and Defendant Steinberg's motions to dismiss the amended complaint in its entirety are GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
      January 20, 2022

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge